Filed 8/27/24  Zinni Media Concept Limited v. Mayweather CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| ZINNI MEDIA CONCEPT LIMITED, | B334403 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19VECV00170) |
| v. | |
| FLOYD MAYWEATHER, JR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Huey P. Cotton, Judge.  Affirmed.

O'keke & Associates and Patrick I. O'keke for Plaintiff and Appellant.

Eisner, Jeremiah Reynolds and Benjamin Kassis for Defendant and Appellant.

Defendant and appellant Floyd Mayweather, Jr. (Mayweather) a well-known American boxer, entered into agreements with Plaintiff and appellant Zinni Media Concept Ltd. (Zinni) to make appearances in Africa that Zinni would organize and finance.  Zinni filed the current lawsuit after Mayweather cancelled all of the appearances and terminated the agreements.  During discovery, Mayweather failed to appear at noticed depositions, failed to facilitate the scheduling of his deposition, and ultimately ceased communicating about his deposition completely.  Some of Mayweather's conduct also violated court orders, including failing to appear for his deposition and failing to pay related monetary sanctions.  The trial court granted Zinni's motion to impose terminating sanctions against Mayweather, and default was subsequently entered against him.  Mayweather then filed a motion to set aside the default, which the trial court denied.  The trial court entered judgment.

On appeal, Mayweather argues that the trial court abused its discretion by imposing terminating sanctions and denying his motion to set aside the default.  Zinni appeals, arguing the trial court abused its discretion by failing to award the full damages pleaded and proved in connection with Mayweather's default.

We affirm the trial court's judgment.

# FACTS AND PROCEDURAL HISTORY

## A.  *The Celebrity Engagement Agreements*

On or about April 2017, Mayweather's agent Keane Anis (Anis) contacted Zinni, a Nigerian firm, with a proposal to enter into a "Celebrity Engagement Agreement" with Mayweather under which Mayweather would make five appearances in Africa in June 2017.  Mayweather and Zinni entered into the agreement, which required Zinni to pay Mayweather $75,000 per appearance for hotel expenses; to book, arrange and pay for ground transportation; to provide security; and to book and pay for the event venue, including sound, regulatory permits, lights, production, and hospitality.  Pursuant to the agreement, Zinni wired Mayweather $10,000 as a good faith commitment.  Upon receipt of a video drop from Mayweather acknowledging the agreement, Zinni wired Mayweather's business, One Entertainment, a total of $200,000 in May and June 2017.  Zinni then made arrangements, including hotel reservations, transportation, security, and venue, and commenced a marketing and promotional campaign to promote Mayweather's appearances.

On or about June 13, 2017, Anis informed Zinni that Mayweather would not be making the agreed-upon appearances.  Zinni demanded a refund of the funds it had wired to Mayweather, but Mayweather refused to comply.  Anis instead proposed a new engagement for Mayweather to make appearances in Africa in December 2017, which Zinni accepted.  The new agreement required Zinni to pay an engagement fee of

3

$550,000, of which the previously wired funds would be deemed a deposit. On or about November 4, 2017, Mayweather terminated the new agreement.

## B.    *Zinni Initiates the Lawsuit*

On July 2, 2018, Zinni filed a complaint filed in federal court, which was subsequently dismissed without prejudice for lack of subject matter jurisdiction.[1]

On February 24, 2019, Zinni filed the instant action in state court. The action was removed to federal court, but then remanded to state court on January 13, 2020.

On July 28, 2020, Zinni filed the operative second amended complaint (SAC) against Mayweather alleging breach of contract, unjust enrichment, and fraud and/or fraud in the inducement. The SAC sought damages suffered by Zinni, including but not limited to the funds Zinni had already paid to Mayweather, expenses and costs incurred, loss of profit and goodwill, legal interest and compensation of injuries suffered as a result of fraud/fraud in the inducement in an amount not less than $2,000,000.

Mayweather answered on August 8, 2020.

---

[1] Equity Legal, LLP (Equity Legal) and its counsel, including managing partner Luiey G. Haddad (Haddad), were retained by Mayweather to defend the action when it was filed in federal court in 2018 and served as counsel until the court granted Haddad's motion to be relieved as counsel on August 19, 2022.

4

**C.**   ***Zinni Attempts to Obtain Mayweather's Deposition***

On December 29, 2020, Zinni noticed Mayweather's deposition to be taken on February 3, 2021.

On January 22, 2021, Mayweather's counsel stated Mayweather would be objecting to the deposition because counsel and Mayweather were unavailable on the noticed date. Zinni's counsel agreed to an extension and asked for alternative dates for Mayweather's deposition. Mayweather's counsel agreed to provide alternative dates as soon as counsel heard from Mayweather. Counsel's email mentioned that Mayweather "is a public figure and due to his travel schedule we have had a difficult time meeting with our client . . . ." On February 28, 2021, Zinni's counsel granted Mayweather a 30-day extension to respond to discovery. On May 10, 2021, Zinni's counsel again requested deposition dates for Mayweather. Counsel advised that if Mayweather did not provide deposition dates by close of business on May 15, 2021, Zinni would file a motion to compel. Mayweather did not respond to Zinni's requests. Mayweather did not: (1) make a written objection to the deposition, (2) request an order staying the deposition, (3) seek to quash the deposition, or (4) obtain a protective order.

**D.**   ***Zinni's Motion to Compel and the Court's First Order Setting Mayweather's Deposition***

On June 22, 2021, Zinni filed a motion to compel Mayweather's attendance and deposition testimony and requested related sanctions in the amount of $9,000 pursuant to

Code of Civil Procedure section 2025.450, subdivisions (a) and (g)(1).[2] Zinni noticed a hearing on the motion for September 29, 2021. Mayweather did not object to the motion to compel.

The court continued the hearing on the motion to compel to December 10, 2021. The court also issued a notice for the parties to attend an informal discovery conference (IDC) on December 2, 2021.

On December 1, 2021, Mayweather filed an answer to the request for IDC stating that he had previously offered possible dates for deposition in January or March 2022 and that "[d]efendant's counsel is working to confirm those months are still available." The answer acknowledged that the purpose of the IDC was to decide Zinni's motion to compel and request for sanctions. Mayweather averred that Zinni demanded non-agreeable dates and attached conditions including reimbursement of attorney fees for the motion to compel and waiver of Zinni's representative's deposition in the event that Mayweather's deposition did not go forward.

During the IDC, the court gave Mayweather's counsel time to contact Mayweather and obtain available dates for deposition. Mayweather's counsel left the room and returned several minutes later committing to a deposition on March 21, 2022. Following the IDC, the court issued an order for Mayweather to appear for deposition on March 21, 2022. The order advised that Mayweather's failure to appear would be in violation of the trial court's order and could subject him to sanctions. The hearing on Zinni's motion to compel was vacated.

---

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

**E.** ***Mayweather's Violation of the Court's December 2, 2021 Order***

Approximately six minutes before Mayweather's scheduled deposition on March 21, 2022, Mayweather's counsel sent an e-mail stating that "over the weekend a business matter arose which requires [Mayweather's] full attention today" so he would not be attending the deposition.

On March 23, 2022, Zinni's counsel sent a letter demanding (1) reimbursement for the $12,970 cost of the cancelled deposition and (2) a list of Mayweather's available deposition dates through April 8, 2022. In the event that Mayweather did not comply, Zinni advised that it would renew its prior motion to compel and request sanctions. Zinni provided a breakdown of its deposition costs upon Mayweather's request.

On March 29, 2022, Mayweather's counsel counter-offered to pay $10,000 of the costs, and he represented that he was "still coordinating with Mr. Mayweather's representatives regarding available dates." On March 30, 2022, Zinni accepted the counter-offer but stated that Mayweather's deposition must be scheduled and payment made by April 3, 2022, or Zinni would renew the motion to compel.

Mayweather neither made payment nor offered deposition dates.

**F.** ***Zinni's Renewed Motion to Compel***

On April 14, 2022, Zinni renewed its motion to compel Mayweather's deposition and sought monetary sanctions in the amount of $16,270.00 and terminating sanctions pursuant to

7

sections 1008, subdivision (b), 2017.010, 2023.010, 2023.030, and 2025.450.  Zinni noticed the motion for hearing on August 19, 2022.

On April 26, 2022, the parties stipulated to continue trial from July 11, 2022 to a date after January 31, 2023.

On April 28, 2022, the trial court denied the request to continue the trial, and set the hearing on the motion to compel for May 16, 2022.

On May 12, 2022, Mayweather's counsel, Equity Legal, LLC (Equity Legal) and managing partner Luiey G. Haddad (Haddad), filed a declaration in opposition to the motion to compel.  Haddad declared that he had immediately informed Mayweather's representative of the court-ordered deposition set for March 21, 2022.  Mayweather's representative had confirmed with Haddad multiple times that Mayweather would appear. The last confirmation was provided on March 18, 2022.  Equity Legal prepared for the deposition and was not informed that Mayweather would not attend until the day of the deposition. Since March 21, 2022, Equity Legal had made diligent attempts to contact Mayweather and his representative without success. Mayweather's representative "ceased communications" with Equity Legal and they were unable to secure an alternative deposition date.  On the same day, Haddad and Equity Legal filed a motion to be relieved as counsel.

### G. *The Court's Second Order Compelling Mayweather's Deposition*

On May 16, 2022, the trial court granted Zinni's motion to compel and request for sanctions in a minute order.  Citing to

8

section 2025.450, the court ordered Mayweather to appear for his deposition and to pay monetary sanctions in the sum of $16,270.00 within 30 days. The court warned that failure to appear could result in terminating sanctions. The court directed Zinni to file a declaration with the court if Mayweather failed to appear within the allotted time. The court advanced and vacated the jury trial scheduled for July 11, 2022.

Mayweather did not appear for deposition.

On June 17, 2022, Zinni filed the declaration and notice of Mayweather's noncompliance with the court's May 16, 2022 order, as the court had instructed. Zinni requested terminating sanctions. Mayweather did not file an opposition to the declaration and notice of noncompliance.

On June 25, 2022, Haddad filed a declaration in support of his motion to be relieved as counsel. Haddad declared that Equity Legal was retained to represent Mayweather in this action in 2018 and had represented him since that time. Haddad was directed to communicate with Mayweather through his representative Brent Johnson. Equity Legal did not experience problems communicating with Mayweather prior to Mayweather's scheduled deposition. Communications with Mayweather's representatives broke down after Mayweather missed the deposition. Haddad confirmed with Jeremiah Reynolds (Reynolds), who served as counsel for Mayweather in another matter, that Johnson was the correct contact person for Equity Legal and Mayweather's regular mailing address in Las Vegas (Las Vegas address), through which Reynolds communicated with him. Haddad attempted to coordinate Mayweather's deposition with Johnson multiple times without success. Johnson ultimately informed Haddad that he was

9

unable to communicate with Mayweather effectively. Haddad filed the motion to be relieved as counsel thereafter, solely on the basis of inability to communicate with Mayweather.

## H. *Order Imposing Terminating Sanctions and Entry of Default*

On August 3, 2022, the trial court issued an order granting terminating sanctions against Mayweather. The court found that Mayweather violated the May 16, 2022 order and that Mayweather would not comply with any order of the court compelling him to cooperate in the discovery process. The court struck Mayweather's answer and cross complaint.

On August 19, 2022, the trial court granted Haddad and Equity Legal's motion to withdraw as counsel.

On October 21, 2022, the trial court entered default against Mayweather. On March 28, 2023, Zinni requested entry of judgment. Zinni sought $6,353,517.00 in damages, including $1,920,581.00 in special damages, $2,867,780 in general damages, interest of $1,548,601.00, costs of $285.00, and attorney fees in the amount of $16,270.

## I. *Mayweather Moves to Set Aside the Default*

On April 21, 2023, Mayweather moved to set aside the default on grounds of excusable neglect, claiming that he was unaware of the court's May 16, 2022 order and unaware that default had been taken against him. Mayweather acknowledged that he did not comply with the court's December 2, 2021 order or its May 16, 2022 order to appear at his deposition. Mayweather

blamed his failure to appear in response to the May 16, 2022 order on Johnson's failure to "effectively coordinate" with him. Neither Johnson nor anyone else informed Mayweather of the deposition ordered in the May 16, 2022 order or the potential consequences, including terminating sanctions. Haddad sent all filings to an incorrect address for Mayweather Promotions, LLC in Las Vegas (the Las Vegas address), which was not Mayweather's personal mailing address. Mayweather argued that because Haddad's affidavit identified the incorrect Las Vegas address rather than stating that the address was unknown, the affidavit contained false information, and under the circumstances, relief from default was proper. Relief from default would not prejudice Zinni, which could resume the litigation. Mayweather could and would attend a deposition if default was removed. The neglect was excusable—if Haddad had further investigated, Mayweather may have been informed of the default. Finally, Mayweather argued that the default judgment was an attempt to defraud the court into entering a fabricated judgment for millions of dollars of punitive damages on a breach of contract claim.

In support of the motion to set aside the default, Mayweather filed a declaration stating that he had never spoken with Haddad and did not know Haddad represented him. Mayweather further declared that "Brent Johnson, a business associate of mine, at one point provided me with updates regarding the lawsuit." However, neither Johnson nor anyone else told Mayweather about the deposition he was ordered to attend in May 2022, or informed him that he could lose the case if he did not comply with the May 2022 order. Mayweather would have complied if he knew he could lose the case. Mayweather

11

had not received copies of the default or default judgment package or other documents mailed to Mayweather Promotions LLC.

Reynolds, who served as Mayweather's new counsel in the matter, also made a declaration in support of the motion to set aside the default. Reynolds declared that Haddad contacted him and requested Mayweather's mailing address. Reynolds said that he did not know Mayweather's personal address, and that the only address he was aware of was the Las Vegas address for Mayweather Promotions, LLC, which he provided to Haddad. Reynolds was in direct contact with Mayweather and Mayweather understood that he needed to appear for his deposition and pay any outstanding monetary sanctions to Zinni. Reynolds declared that there was no record of the default ever arriving at his office.

Zinni filed an opposition to the motion to set aside the default on June 4, 2023. Zinni argued that Mayweather did not qualify for mandatory relief under section 473, subdivision (b), because the motion was not accompanied by his counsel's affidavit attesting to the attorney's mistake, inadvertence, surprise, or neglect. The burden was on Mayweather to demonstrate that the neglect was excusable—i.e., that the default could not have been avoided through the exercise of ordinary care. Zinni argued that Mayweather's motion was barred because it was not filed within the statutory six-month period or within a reasonable time. Moreover, Mayweather's declaration was disingenuous. Mayweather's statement that he did not know Haddad was his attorney was belied by the many actions Haddad had taken on his behalf in the matter—Hadad removed the action to federal court, filed a notice of demurrer that was

12

sustained in part, filed an answer to the SAC, filed a cross-complaint, and served discovery demands on Zinni. Mayweather personally signed the verifications of his responses to Zinni's discovery demands, which Haddad submitted to Zinni. Haddad's declaration stated that he was retained by Mayweather in 2018 to defend this action. Mayweather's statement that Johnson provided him with updates on the lawsuit was an acknowledgment that he was aware of the case. Mayweather's decision to ignore the lawsuit due to his celebrity status did not constitute excusable neglect, surprise, or inadvertence. It was irrelevant whether Mayweather was told about the May 16, 2022 order, as he was represented by an attorney whose inexcusable neglect, if any, was chargeable to Mayweather. The order specifically warned that failure to comply could result in terminating sanctions. The default judgment and default package were served on Mayweather at the Las Vegas address, current counsel Reynolds, and former counsel Haddad. The mailed documents were not returned as undeliverable. The judgment package was signed as received by Reynolds and Haddad. That Haddad provided an incorrect address was not a ground to set aside the default—if true, it was Haddad's mistake, inadvertence, or neglect, and not Mayweather's. Haddad did not file a declaration acknowledging a mistake.

Zinni's counsel Patrick O'keke's declaration was filed in support of the opposition to the motion to set aside the default. O'keke verified the facts set forth in the opposition. O'keke further declared that Mayweather could not be served at any address that Mayweather provided Zinni in the federal action. Zinni retained a detective agency, which identified Mayweather's mailing address as the Las Vegas address, which was also used

13

by Mayweather's numerous corporations as their mailing address. At the IDC on December 2, 2021, the court directed Mayweather's counsel to contact Mayweather by phone so that Mayweather could personally provide and confirm the date he would be available for deposition. Mayweather's counsel returned to the conference call with the court and represented that he had discussed the deposition with Mayweather, who confirmed he would be available for deposition on March 21, 2022, at 10:00 a.m. The court's December 2, 2021 order directing Mayweather to appear on March 21, 2022 was based on Mayweather's counsel's representation. Haddad's motions to be relieved as counsel, his proposed order, and the court's order granting the motion to be relieved as counsel were served on Mayweather at the Las Vegas address. Haddad e-mailed O'keke contact information for Mayweather's representatives, including Reynolds. Zinni served the judgment package on Mayweather at the Las Vegas address, and to Reynolds and Haddad and provided proofs of service.

On July 11, 2023, Mayweather replied to opposition. In addition to reiterating the points in the motion, Mayweather argued that he should not be held responsible for Johnson's failure to communicate with him because Johnson was an "informal information liaison" not a court-appointed agent or representative. Johnson's knowledge could not be imputed to Mayweather. The reply also argued that the motion was timely made. Mayweather concurrently filed evidentiary objections to the exhibits attached to the opposition, objections to the exhibits attached to O'keke's declaration, and a supplemental declaration from Reynolds. Reynolds declared that he did not have actual

notice of the default until April 5, 2023, the date upon which his office received a copy of the default judgment package.

On July 18, 2023, the trial court denied the motion to set aside the default. The court ruled that the motion was timely filed but that Mayweather's unconcerned approach to the lawsuit—not knowing who his attorney was and relying on Johnson, an informal liaison, to keep him apprised of the litigation, was not excusable neglect. The court noted that Mayweather's argument that the damages far exceeded those specified in the complaint was not relevant to the inquiry, but that he could be heard on that issue if he chose to attend the default prove up hearing.

## J.     *The Default Prove Up Hearing*

On September 27, 2023, a default prove-up hearing was held. After considering the oral and written arguments of the parties, the court found that the damages to Zinni were limited to the $1,638,542.00 incurred plus pre-judgment interest, plus outstanding sanctions in the amount of $16,270.00.

## K.     *Entry of Judgment*

On October 31, 2023, judgment was entered by the court. Mayweather was required to pay Zinni $1,638,542.00 in damages, $721,881.32 in prejudgment interest, $16,270.00 in attorney fees, and $285.00 in costs, for a total of $2,376,978.32.

On December 13, 2023, Mayweather appealed the default judgment. Zinni also appealed.

# DISCUSSION

## A.    *Order Imposing Terminating Sanctions*

### 1.  <u>Legal Principles</u>

" 'California discovery law authorizes a range of penalties for a party's refusal to obey a discovery order, including monetary sanctions, evidentiary sanctions, issue sanctions, and terminating sanctions.  [Citations.]  A court has broad discretion in selecting the appropriate penalty . . . .' " (*J.W. v. Watchtower Bible & Tract Society of New York, Inc*. (2018) 29 Cal.App.5th 1142, 1169.)  " 'The discovery statutes . . . "evince an incremental approach to discovery sanctions, starting with monetary sanctions and ending with the ultimate sanction of termination." [Citation.]  Although in extreme cases a court has the authority to order a terminating sanction as a first measure [citations], a terminating sanction should generally not be imposed until the court has attempted less severe alternatives and found them to be unsuccessful and/or the record clearly shows lesser sanctions would be ineffective.' (*Lopez v. Watchtower Bible & Tract Society of New York, Inc*. (2016) 246 Cal.App.4th 566, 604 [605], italics omitted.)" (*J.W. v. Watchtower Bible & Tract Society of New York, Inc., supra*, 29 Cal.App.5th at p. 1169.)  "The trial court may order a terminating sanction for discovery abuse 'after considering the totality of the circumstances:  [the] conduct of the party to determine if the actions were willful; the detriment to the propounding party; and the number of formal and informal attempts to obtain the discovery.' (*Lang v. Hochman* (2000) 77

16

Cal.App.4th 1225, 1246.) Generally, '[a] decision to order terminating sanctions should not be made lightly. But where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction.' (*Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262, 279–280.) Under this standard, trial courts have properly imposed terminating sanctions when parties have willfully disobeyed one or more discovery orders. (*Lang v. Hochman, supra*, 77 Cal.App.4th at pp. 1244–1246 [discussing cases].)" (*Los Defensores, Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 390.)

"We review an order imposing discovery sanctions under the abuse of discretion standard. [Citation.] An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice. [Citations.] The abuse of discretion standard affords considerable deference to the trial court, provided that the court acted in accordance with the governing rules of law." (*New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1422.) " 'It is appellant's burden to affirmatively demonstrate error . . . . [Citation.] We presume the trial court's order was correct and indulge all presumptions and intendments in its favor on matters as to which it is silent.' [Citations.] The question on appeal 'is not whether the trial court should have imposed a lesser sanction; rather, the question is whether the trial court abused its discretion by imposing the sanction it chose.' " (*Padron v.*

17

*Watchtower Bible & Tract Society of New York, Inc.* (2017) 16 Cal.App.5th 1246, 1260.)

### 2. <u>Analysis</u>

#### a. *History and Pattern of Abuse*

Mayweather first argues there was no history or pattern of abuse in his case because he was only noncompliant in regards to his deposition, and was responsive to other forms of discovery. But a trial court is not required to find that a defendant has been unresponsive to multiple categories of discovery before determining that the defendant has a history of discovery abuse; it is sufficient that the defendant has abused the discovery process repeatedly as to one category of discovery. (See e.g., *Lang v. Hochman, supra*, 77 Cal.App.4th at p. 1246 [imposition of terminating sanctions not an abuse of discretion where party failed to fully respond to request for production].)

Mayweather further contends that there was no pattern of discovery abuse, because he failed to comply with only one court order, the May 16, 2022 order requiring him to appear for deposition. He claims violation of a single court order cannot be the basis for terminating sanctions. In imposing sanctions, however, a trial court considers the defendant's actions as a whole—noncompliance with both formal and informal attempts to compel discovery is taken into account. (*Los Defensores, Inc. v. Gomez, supra*, 223 Cal.App.4th at p. 390.) Here, the record amply supports a pattern of refusal to submit to a deposition. Zinni first noticed Mayweather's deposition to occur on February 3, 2021. Mayweather refused to appear. Zinni agreed

18

to reschedule, and Mayweather's counsel promised to provide dates that Mayweather would be available, but over the next few months, no dates were given. On May 10, 2021, Zinni sent Mayweather a letter demanding that he provide deposition dates within five days or Zinni would be forced to file a motion to compel. Mayweather did not provide dates by the deadline, or in the month following the demand and Zinni filed the motion to compel on June 22, 2021. Even then, Mayweather did not offer deposition dates, oppose the motion to compel, or respond to the motion in any way.

The parties then attended an IDC set by the court and addressed the issue of Mayweather's deposition. The court had counsel contact Mayweather during a break in proceedings and obtained and ordered an agreed-to deposition date of March 21, 2022. This gave Mayweather three and a half months' notice of the date. Although Mayweather confirmed with his counsel multiple times that he would appear, minutes before the deposition was to take place, Mayweather informed Zinni and his own counsel that he would not be attending because a business matter that arose over the weekend needed his attention.

Zinni demanded reimbursement for the cost of the deposition and continued to press for available dates. Mayweather's counsel negotiated a lesser payment and stated that counsel was coordinating with Mayweather on dates, and the parties agreed Mayweather would provide available dates by April 3, 2022. Mayweather neither made payment nor offered deposition dates.

On April 14, 2022, Zinni renewed its motion to compel Mayweather's deposition and sought monetary and terminating sanctions. As a result, the court issued its May 16, 2022 order

requiring Mayweather to pay sanctions and appear for his deposition within 30 days, instructing Zinni to file a declaration if Mayweather did not comply and indicating Mayweather would then be subject to terminating sanctions. Again, Mayweather failed to make himself available for deposition or pay the monetary sanction. After Zinni filed the anticipated declaration informing the court of these failures, Mayweather did not respond in any manner until nearly a year later on April 21, 2023, after the court imposed terminating sanctions and entered default. The record supports a finding that Mayweather had a history of abusing the discovery process.

### b. *Willful Violation*

Mayweather next argues that the trial court did not make a finding that he was personally aware of his obligations in the May 16, 2022 order and therefore the court did not find that his violation was willful. As we previously stated, " '[w]e presume the trial court's order was correct and indulge all presumptions and intendments in its favor on matters as to which it is silent.' " (*Padron v. Watchtower Bible & Tract Society of New York, Inc.*, *supra*, 16 Cal.App.5th at p. 1260.) This includes the trial court's finding of willfulness.

As the trial court later discussed explicitly when it denied Mayweather's motion to set aside the default, on this record termination is amply supported, even assuming Mayweather did not have personal knowledge of the May 16, 2022 order. Mayweather purposefully placed himself in a position where he was unlikely to get complete information, if any, regarding the litigation. He declared that he had never met his lawyer and did

not know who represented him. If Mayweather's arguments at the hearing on the motion to set aside the default are to be believed, he did not even ensure that his attorney had his mailing address. His sole contact with his lawyer was through Johnson, an informal liaison who "at one point provided [him] with updates regarding the lawsuit." Mayweather was aware that his deposition had been scheduled repeatedly and that he had not appeared. He was also aware that he agreed to the March 21, 2022 date at the IDC—he chose the date—and that the court ordered him to appear on that date or face sanctions, yet he did not provide dates, pay sanctions, or facilitate the deposition in any way. Mayweather's orchestrated ignorance constitutes willfulness. To the extent that he was uninformed regarding his lawsuit and obligations, he chose to be. (See *Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 787–788 [willfulness means "[a] conscious or intentional failure to act, as distinguished from accidental or involuntary noncompliance "].)

### c. Lesser Sanctions

Mayweather next argues that the trial court failed to "adhere to California's mandate that an 'incremental approach' be taken with respect to discovery sanctions" and consider lesser sanctions. We reject this argument as well.

First, the law does not "mandate" that a trial court impose a specific type of sanction. "A court has broad discretion in selecting the appropriate penalty, and we must uphold the court's determination absent an abuse of discretion." (*Lopez v. Watchtower Bible & Tract Society of New York, Inc.*, *supra*, 246 Cal.App.4th at p. 604.) "[W]here a violation is willful, preceded

21

by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction." (*Moofly Productions, LLC v. Favila* (2020) 46 Cal. App. 5th 1, 12.) "The question on appeal 'is not whether the trial court should have imposed a lesser sanction; rather, the question is whether the trial court abused its discretion by imposing the sanction it chose.' " (*Padron v. Watchtower Bible & Tract Society of New York, Inc.*, *supra*, 16 Cal.App.5th at p. 1260.)

Second, in several opportunities to make filings and presentations to the court, Mayweather never requested a lesser sanction. Having failed to raise the issue with the trial court he cannot now complain that it abused its discretion by not considering his belated request. (See *J.W. v. Watchtower Bible & Tract Society of New York, Inc.*, *supra*, 29 Cal.App.5th at p. 1170 ["[w]e cannot conclude the trial court abused its discretion by failing to enter an order that was never suggested"].)

Finally, the trial court did impose a lesser sanction—it imposed a monetary sanction that Mayweather failed to comply with, and which he barely acknowledges as a violation of the court's order in the opening brief. Mayweather states only that if he had known he would lose the case he would have complied with the May 16, 2022 order. Mayweather's numerous failures to comply with both formal and informal attempts to compel his deposition demonstrate that Mayweather set the bar for compliance at default. The trial court did not abuse its discretion by finding that Mayweather would not otherwise comply.

*d. Citation to Authority for Terminating Sanctions*

Finally, Mayweather contends that the trial court's order must be reversed because the court failed to identify under which statutory or other authority the terminating sanctions were imposed and failed to hold a hearing on the matter in violation of his due process rights.

We reject this argument as well. Zinni filed its second motion to compel Mayweather's deposition and requesting monetary and terminating sanctions pursuant to sections 1008, subdivision (b), 2017.010, 2023.010, 2023.030, and 2025.450. Mayweather opposed the motion through the declaration of Haddad. A hearing was held on May 16, 2022, at which the parties presented arguments.[3] Following the hearing, the trial court issued a minute order that detailed Mayweather's failures to comply with discovery, and granted the motion pursuant to section 2025.450. The court ordered Mayweather to pay monetary sanctions for his failure to appear at the deposition and to appear for deposition within 30 days. If Mayweather failed to comply, Zinni was to file a declaration informing the court of his failure, at which time the court would consider terminating sanctions. Mayweather failed to appear, and Zinni made its declaration on June 17, 2022. Mayweather did not oppose the declaration in any manner. As a result, the trial court ordered terminating sanctions on August 3, 2022.

Mayweather had notice that terminating sanctions could be imposed pursuant to section 2025.450, which authorizes

---

[3] Mayweather did not provide a reporter's transcript of the May 16, 2022 hearing.

imposition of terminating sanctions for violation of an order to appear at deposition under subdivision (h) ("If [a] party . . . fails to obey an order compelling attendance, testimony, and production, the court may make those orders that are just, including the imposition of an issue sanction, an evidence sanction, or a terminating sanction . . . ."). Mayweather had an opportunity to argue the issues at the May 16, 2022 hearing, and did so. He did not oppose Zinni's declaration giving notice of the violation or otherwise raise any additional issues or facts for the trial court's consideration. His due process rights were not implicated.

## B.   *Denial of Motion to Set Aside Default*

Mayweather next contends that the trial court abused its discretion by denying his motion to set aside the default on grounds of excusable neglect pursuant to section 473, subdivision (b). We disagree.

Section 473, subdivision (b) permits the trial court to "upon any terms as may be just, relieve a party . . . from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." "The statute 'contains both mandatory and discretionary provisions,' but only the discretionary provision is at issue. (*Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1414.)" (*County of San Bernardino v. Mancini* (2022) 83 Cal.App.5th 1095, 1102.) Excusable neglect exists when "a reasonably prudent person in similar circumstances might have made the same error." (*Huh v. Wang, supra*, at p. 1423.) "We review the trial court's discretionary decision to grant or deny relief under

24

section 473(b) for an abuse of discretion." (*County of San Bernardino v. Mancini, supra*, at p. 1103.)

Mayweather again argues that he was unaware of the trial court's May 16, 2022 order, citing the breakdown of communication between Johnson and Haddad.[4] However, the neglect the trial court found inexcusable was not the breakdown of communication between Mayweather's informal representative and his attorney, it was Mayweather's decision to take a cavalier approach to the lawsuit. Mayweather declared that he never met Haddad and did not know Haddad was his attorney, and claimed that Haddad did not use a correct mailing address to send pleadings and filings to him. Instead, Mayweather relied on Johnson, an "informal liaison" to provide him with information at some unidentified "point" in the lawsuit. In sum, on this record we cannot say that the trial court's conclusion that Mayweather did not make the same error that " 'a reasonably prudent person in similar circumstances might have made . . . .' " is an abuse of discretion. (*Huh v. Wang, supra*, 158 Cal.App.4th at p. 1423.)

---

[4] Mayweather's complaint that "[the] reasons [for the communication breakdown] were never examined or determined" rings hollow. This court cannot ascertain whether the reasons behind the disconnect were discussed at the hearing, as Mayweather has not provided a reporter's transcript. To the extent that the communication failure remains a mystery, the impetus was on Mayweather to discover why and how communications broke down and present evidence to the court. It does not appear from the record before us that he did so.

## C.    *Zinni's Appeal for Damages*

Zinni argues that the trial court abused its discretion because it failed to consider and award Zinni the damages for either its contingent costs of $262,850.00, or for its lost profit/revenue of $3,325,511.00.

### 1.  <u>Legal Principles</u>

A defendant's default operates as an admission of the matters well-pleaded in a complaint.  (*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 281.)  "The 'well-pleaded allegations' of a complaint refer to ' " 'all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " ' [Citation.]" (*Ibid.*)  As a result of the well-pleaded complaint rule, a plaintiff at a prove-up hearing under section 585 need not introduce evidence in support of the complaint's allegations of liability.  (*Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 899–900.)  A plaintiff's burden with respect to his or her alleged damages, however, is different.

Where, as here, the relief sought in a complaint is more complicated than a ministerial award of compensatory damages, a plaintiff who seeks a default judgment must request entry of the judgment by the court.  (§ 585, subds. (a)–(b); *Kim v. Westmoore Partners, Inc.*, *supra*, 201 Cal.App.4th at p. 287.)  The plaintiff must affirmatively establish that he or she is entitled to the specific judgment requested:  "The court shall hear the evidence offered by the plaintiff, and shall render judgment in the plaintiff's favor for that relief, not exceeding the amount

stated in the complaint, . . . as appears by the evidence to be just."  (§ 585, subd. (b); *Kim v. Westmoore Partners, Inc.*, *supra*, at p. 287.)

"The power of an appellate court to review the trier of fact's determination of damages is severely circumscribed.  An appellate court may interfere with that determination only where the sum awarded is so disproportionate to the evidence as to suggest that the verdict was the result of passion, prejudice or corruption [citations] or where the award is so out of proportion to the evidence that it shocks the conscience of the appellate court. [citations]."  (*Uva v. Evans* (1978) 83 Cal.App.3d 356, 363–364.)

## 2. Proceedings

In its SAC, Zinni alleged specified actual damages of $210,000.00 paid directly to Mayweather and an additional sum of not less than $2,000,000.00 for loss of profit and goodwill, and for expenses incurred in arranging and planning for Mayweather's appearances.  Thus, Mayweather had notice that Zinni sought damages in the amount of $2,210,00.00.  (See § 580; *Greenup v. Rodman* (1986) 42 Cal.3d 822.)

In its request for entry of judgment after default was entered, Zinni submitted a judgment package requesting a total of $6,353,517.00, including special damages of $1,920,581.00, general damages of $2,867,780.00, interest of $1,548,601.00, costs of $285.00, and attorney fees of $16,270.00.

After considering the oral and written arguments of the parties, the court found that the damages to Zinni were limited to actual costs of $1,638,542.00 plus pre-judgment interest, plus

outstanding sanctions in the amount of $16,270.00.  The court did not elaborate further on its ruling.

### 3.  <u>Analysis</u>

Zinni's contention depends on what transpired at the default prove up hearing, but he has not provided a sufficient record of proceedings to demonstrate reversible error.  California Rules of Court, rule 8.120(b) provides three alternatives if an appellant "intends to raise any issue that requires consideration of the oral proceedings in the superior court . . . :  [¶] (1) A reporter's transcript under rule 8.130; [¶] (2) An agreed statement under rule 8.134; or [¶] (3) A settled statement under rule 8.137."  Zinni has failed to follow any of these alternatives.

" ' "A judgment or order of the lower court is *presumed correct*." ' "  (*Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 574.)  In the absence of a record of the oral proceedings, " ' "any condition of facts consistent with the validity of the judgment will be presumed to have existed rather than one which would defeat it . . . ." ' "  (*Id*. at p. 575.)  We must therefore presume the trial court considered the damages that Zinni sought at the hearing, and we resolve any ambiguity or vagueness in the minute order in favor of the trial court's action.  (*Ibid*. [absence of record of oral proceedings prevented appellant from rebutting presumption that he orally stipulated in trial court to having matter heard by commissioner].)

## DISPOSITION

We affirm the trial court's judgment.  Each party is to bear their own costs on appeal.

NOT TO BE PUBLISHED.


MOOR, J.


We concur:


BAKER, Acting, P. J.


DAVIS, J.*

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

29